Robert W. Bascom, S.
Certain questions of ademption arise upon this proceeding to construe clause third (except phrases (c), (e) and (h) thereof) of the will of Spencer Coleman. The clause in question reads: “ third, In the event that my mother, mabel g. coleman, shall predecease me or in the event that we both shall die as a result of a common disaster, epidemic or calamity or within sixty days of each other, or in the event that my mother shall survive me and at her death there remains any of my property undisposed (a) I give, devise and bequeath *838 the house and lot at 5 Maple Avenue, Village of Fort Edward, 1ST. Y. to marión abbott johnston of Rochester, N. Y., (b) the Imperial Paper & Color Corporation stock to suzanne and helen johnston, of Rochester, N. Y., (c) the United States Steel Corporation stock to john icoerner, of Rochester, N. Y. and to joanne k. gianinny of Albany, 1ST. Y., (d) the stock in Dividend Shares to bruce gianinny of Albany, N. Y., (e) the American Telephone & Telegraph Company stock to john vines, of Kingston, N. Y., (f) the City of Tampa bond and the Glens Falls Insurance Co. stock to olin salmon of Mechanicsville, N. Y., (g) the diamond solitaire ring now in my deposit box in the Fort Edward Branch of the Glens Falls National Bank & Trust Company to helena g. clark of Cleverdale, N. Y., (h) the sterling silver marked as belonging to Mabel G. Coleman to john vines, now of Kingston, N. Y., formerly of Fort Edward, N. Y.”
Testator wholly divested himself of the mentioned house and lot by conveyance thereof to a stranger seven months before his death. He thereby effected an ademption or revocation, as the conveyance was wholly inconsistent with the nature of the previous devise (Decedent Estate Law, §§ 39, 40; Matter of Eibl, 206 Misc. 54). The diamond solitaire ring was unquestionably a specific legacy and this legacy also adeemed, as it was delivered and given to the named legatee prior to testator’s death (Matter of Rubinstein, 169 Misc. 273).
It will be noted that the remaining bequests of that part of the clause under consideration are of stocks or bonds. The City of Tampa bond, the dividend shares and the Glens Falls Insurance Company stock had all been sold during Coleman’s lifetime, however, and the stock of Imperial Paper & Color Corporation had been exchanged for stock of Hercules Powder Company, the latter two corporations having merged under the Hercules name prior to his death. The question of ademption of these stocks and bonds depends upon whether the several legacies were general or specific. This, in turn, depends upon testator’s intention as gathered from the entire will.
As a general rule a gift of stocks or bonds is a general legacy, where there is nothing in the will to indicate that it is a gift of particular bonds or stocks held by a testator (Tifft v. Porter, 8 N. Y. 516). The mere fact that particular stocks or bonds, bequeathed to a particular person, were owned by a testator both at the time of execution of his will and at his death, does not make a legacy thereof specific. There must be something in the will to indicate that he meant the particular stocks which then belonged to him. Where, for example, the words “my *839 shares ” of a particular company are used in making the bequest, that is sufficient to constitute the gift a specific legacy (Tifft v. Porter, supra; Matter of Brewster, 144 Misc. 888; Matter of Liell, 139 Misc. 513). In this case testator uses the words “ the stock ” of a particular company, or “ the City of Tampa bond ”, ‘ ‘ the diamond solitaire ring ’ ’, and 11 the sterling silver 5 5 marked in a particular manner.
There would seem to be little doubt that by the use of this language testator was referring only to, and identifying or earmarking particular stocks owned by him at the execution of the will, and that he desired these particular items delivered to the designated legatees. To hold otherwise, and find that general legacies were intended, would require the executor to purchase all the stock of the named corporation, an obvious impossibility. The legacies are therefore specific, and not general. Being such, they are subject to the rule of ademption. It follows then that the legacies of the dividend shares, the City of Tampa bond and the stock of Glens Falls Insurance Company having been disposed of in testator’s lifetime, adeemed and do not take effect (Matter of Ireland, 257 N. Y. 155; Matter of Baker, 146 Misc. 437).
As to the stock of Imperial Paper & Color Corporation which was absorbed by a corporate merger with Hercules Powder Company, there is some question as to whether it adeemed, as a change in the nature of property ordinarily works an ademption (Matter of Brann, 219 N. Y. 263), unless it is a change in name or form only (Matter of Bradley, 119 Misc. 2; Goode v. Reynolds, 208 Ky. 441; Matter of Slater, [1907] 1 Ch. 665; Gorham v. Chadwick, 135 Me. 479). Since this proceeding was instituted, however, the residuary legatee has stipulated that the corporate merger did not effect an ademption, and has consented to the entry of a decree providing for the transfer of this stock to the named legatees. On this stipulation, it is found that no ademption occurred.
Submit decree construing the devise and the legacies in clause third as specific, and providing for the ademption of the legacies of the Tampa bond, the dividend shares and the Glens Falls Insurance Company stock, and further, for the delivery to the designated legatees of the stock of Hercules Powder Company held by testator at his death, in lieu of stock of Imperial Paper & Color Corporation, together with the income therefrom since the date of death (Matter of Liell, 139 Misc. 513, supra) and without commissions to the executor on any specific legacy or the income therefrom (Surrogate’s Ct. Act, § 285; Matter of Good, 145 Misc. 431).
*840 The account is settled and allowed as filed, except for the computation of commissions, and the claims of the executor and his attorney, for services to the testator in his lifetime, and expenses, are allowed.